IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CR-129-1-F
No. 5:12-CV-415-F

| | |
|---|---|
| DAWNICE IQUAN WILKINS, )<br>　　　Petitioner, )<br>　　　　　　　　　　　　)<br>　　v. 　　　　　　　　　)<br>　　　　　　　　　　　　)<br>UNITED STATES OF AMERICA, )<br>　　　Respondent. 　　　) | ORDER |

This matter is before the court on motion [DE-85], filed by petitioner, Dawnice Iquan Wilkins, to vacate, set aside or correct her conviction and/or sentence, imposed by the undersigned on January 3, 2011, *see* [DE-64], and affirmed by unpublished opinion [DE-75] filed July 15, 2011, *see United States v. Wilkins*, 439 Fed. App'x 203 (4th Cir. 2011). Ms. Wilkins pled guilty to a one-count Criminal Information [DE-7] charging her with conspiracy to commit mail fraud and bank fraud in violation of 18 U.S.C. § 371. Three co-defendants also were charged in the Information. Wilkins, with the assistance of her counsel, negotiated and entered into a plea agreement with the Government. *See* Memorandum of Plea Agreement [DE-13]. The Official Transcript [DE-71] of Ms. Wilkins' Rule 11 hearing reflects that she was fully advised of her constitutional rights, the penalties to which her plea of guilty exposed her, and the terms of her plea agreement. Ms. Wilkins stated under oath that she understood, and confirmed the terms of the plea agreement.

Ms. Wilkins also was able to extract several concessions by the Government which were memorialized in the Plea Agreement, including a stipulation that her base offense level would be

6, pursuant to USSG § 2B1.1(a)(2); that, although an upward adjustment of 6 levels was warranted under USSG § 2B1.1(b)(1)(D) in light of the loss amount, an upward adjustment was not warranted under USSG § 2B1.1(b)(9)(C) because the offense did not involve sophisticated means; that an upward adjustment of 2 levels was warranted under USSG § 3B1.1(c) because, although she was an organizer, leader, manager or supervisor in a criminal activity, that activity did not involve five or more participants and was not otherwise extensive; and that a downward departure of 2 levels for acceptance of responsibility was warranted under USSG § 3E1.1. *See* Memorandum of Plea Agreement [DE-13] at ¶ 5. Notwithstanding the foregoing, the court advised Ms. Wilkins, *inter alia*, "that your attorney's calculation of your anticipated sentence is only an estimate and that it is solely the court that will determine your sentence." Transcript of Arraignment [DE-71], p. 5. The court further advised Ms. Wilkins that, "should you enter into a plea agreement with the Government you should realize that the court is in no way a party to the same. Such agreements are negotiated solely between you, your lawyer, and the lawyer for the Government. You are advised that any stipulations contained in your plea agreement are not binding on the court for determining your sentence. Rather, the court will make an independent determination of your sentence after applying all of the sentencing factors to your case." *Id.* pp. 6-7.

Addressing Ms. Wilkins individually, the court recited the elements of the charge against her, and inquired of her understanding of the proceedings, the voluntariness of her entry into the plea agreement with the Government, the terms and consequences of that agreement, and her understanding and assent thereto. In Ms. Wilkins' presence, the Assistant United States Attorney read into the record the terms of the parties' plea agreement, including the caveat that "the court

will take into account, but is not bound by, the applicable United States Sentencing Guidelines. That the sentence has not yet been determined by the court. That any estimate of the sentence received from any source is not a promise and that even if the sentence up to the statutory maximum is imposed the defendant may not withdraw the plea of guilty." *Id.* p. 22. Reading aloud the introduction to the paragraphs listing the matters to which the parties had stipulated, the Assistant United States Attorney reiterated, "The parties agree to the following positions as to the below listed sentencing factors only, which are not binding on the court in its application of the advisory guideline range . . . ." *Id.* p. 23. When the Assistant United States Attorney had concluded reading the parties' plea agreement, the undersigned asked Ms. Wilkins,

> THE COURT: Do you understand that the terms of the plea agreement are merely recommendations to the court?
>
> MS. WILKINS: Yes.
>
> THE COURT: Do you understand that any stipulations within the plea agreement do not bind the court?
>
> MS. WILKINS: Yes.
>
> THE COURT: Do you further understand that you reserve only the right to appeal from an upward departure from the advisory guideline established at sentencing and that you otherwise waive all rights to appeal whatever sentence is imposed and you waive all rights to contest your conviction or sentence in a post-conviction proceeding except upon the grounds of ineffective assistance of counsel or prosecutorial misconduct not known to you at this time?
>
> Ms. WILKINS: Yes.

*Id.* pp. 24-25.

At sentencing, defense counsel advised that only one objection to the Presentence Report remained and it related to the parties' stipulations concerning role in the offense and the amount of loss. Both the Government and defense counsel sought to convince the court to adhere to the

3

parties' stipulations as to those factors, but the Probation Officer preparing the Presentence Report had cited support for greater numbers. The court directed the Government to put the case agent on the stand. In addition to Ms. Wilkins' named co-defendants, the agent named other individuals who were involved in the conspiracy.[1] In response to the court's questions, the agent testified that there were in excess of 60 accounts used in the illegal scheme, *see* Sentencing Transcript [DE-72], p. 8, but corrected himself when the court noted that the Presentence Report reflected there were at least 119 accounts with valid social security numbers. *See id.* p. 9. The court commented, "Well I think this was very extensive criminal activity, which she organized, and I think the Probation Officer has got the enhancement correct. . . . I think the adjustment is not based on the number of participants, but the extensive nature of the fraud, and I think it's appropriate." *Id.* p. 10. Before hearing from counsel, the court announced, "Counsel, I intend to depart upwardly because of the uncaptured harm to the individuals and [Wilkins'] criminal history, et cetera." *Id.* p. 11.

Wilkins' defense attorney presented a lengthy, passionate argument on behalf of his client, stressing her cooperation, her family obligations, her efforts to better her education and employment. The Government stressed Ms. Wilkins' early cooperation and sought a sentence within the advisory USSG range. Ms. Wilkins personally advised the court under oath that she did not have objections to anything contained in the Presentence Report that her lawyer had not raised. *See id.* p. 16.

---

[1] Specifically, the agent named also confirmed participation by Billy Oates, Cleveland Hill and Ricky Ellis. Sentencing Transcript [DE-72] p. 7; *see also id.* pp. 18-19.

4

The Presentence Report reflected the United States Probation Officer's calculation of an advisory USSG range of 27-33 months, based on an offense level of 17 and criminal history category of II. However, the sentencing hearing transcript [DE-72] reflects verbatim the court's rationale for departing upwardly to arrive at an offense level of 18, criminal history category of V, and advisory USSG range of 57-71 months. Ms. Wilkins was sentenced within that revised range to the statutory maximum of 60 months imprisonment. *See id.* pp. 18-22. Ms. Wilkins and her lawyer had been placed on notice of the likelihood of an upward departure by the Probation Officer's "Factors That May Warrant Departure or Variance," Presentence Report ¶¶ 69 & 70.

The transcript reveals that among the factors justifying the court's departure were Ms. Wilkins' ten (10) prior felony convictions for conduct similar to the offense of conviction, none of which were counted in determining Ms. Wilkins' criminal history score due to their age. The court found that her criminal history score substantially under-represented the seriousness of Ms. Wilkins' prior criminal conduct and the likelihood she would re-offend. The court also was appalled to learn that 119 of the social security numbers Ms. Wilkins and her co-defendants misappropriated belonged to individuals, each of whom was harmed or potentially harmed, embarrassed and inconvenienced by the fraud and intended fraud.

The Fourth Circuit Court of Appeals affirmed Ms. Wilkins' sentence, remarking in part,

> [T]he record supports the district court's conclusion that Wilkins' criminal history category failed to reflect adequately the seriousness of her criminal history and the likelihood of her recidivism. Wilkins had over ten un-scored convictions not included in her criminal history category, a lengthy criminal history replete with recidivism, and numerous convictions involving fraud. Moreover, the record supports the conclusion that Wilkins' offense level understated the seriousness of the offense. Wilkins created over 250 fraudulent bank accounts and used over 115 legitimate social security numbers to set up those accounts. We agree with the district court that the potential financial harm, embarrassment, and inconvenience to the affected individuals is "immeasurable."

5

*Wilkins*, 439 Fed. App'x at 205-06. Furthermore, the appellate court determined, "considering the potential harm in play, the district court's modest two-level increase under USSG § 2B1.1, comment (n.19(a)), was reasonable." *Id.* at 206.

Because the court departed upwardly in arriving at the appropriate advisory USSG range at sentencing, Ms. Wilkins retained her right to appeal her sentence, notwithstanding other waiver provisions of paragraph 2c in her Plea Agreement. In the instant § 2255 motion, Ms. Wilkins restates two of the grounds for relief she raised in her direct appeal, only this time, she labels them "Ineffective Assistance of Counsel." Although she states that her lawyer's "performance was deficient," there is nothing in her § 2255 motion to suggest in what manner she contends her lawyer provided ineffective assistance in violation of her constitutional rights. Instead, she blames the court's sentencing decisions on unidentified shortcomings by her lawyer's performance; that is, she claims her lawyer was ineffective because he did not prevent the court from sentencing her more favorably.

In fact, the record reveals that Ms. Wilkins' lawyer was successful in negotiating a very favorable plea agreement on her behalf. The sentencing hearing transcript details the Government's support of defense counsel's position concerning many of the sentencing factors and calculations about which Ms. Wilkins complained on appeal and raises again in the instant motion. Claims that were raised and addressed on appeal, however, may not be re-litigated on collateral review, *see Boeckenhaput v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976), unless there has been an intervening change in the law, *Davis v. United States*, 417 U.S. 333, 342 (1974). Ms. Wilkins does not allege that the law has changed in her favor.

Nor may a bare declaration that the petitioner was denied effective assistance of counsel at sentencing transform a challenge to the computation of a sentence into a claim of constitutional magnitude cognizable under § 2255. *Cf. United States v. Djelevic,* 161 F.3d 104, 107 (2d Cir. 1998) (in determining scope of appeal waiver, stating that "despite his effort to dress up his claim as a violation of the Sixth Amendment, Pepshi in reality is challenging the correctness of his sentence under the Sentencing Guidelines"). Although a claim of ineffective assistance of counsel is subject to collateral review pursuant to § 2255, *see McMann v. Richardson,* 397 U.S. 759, 771, n.14 (1970), in order to prevail on such a claim, the petitioner must allege and prove two things: first, that counsel's performance fell below an objective standard of reasonableness; and second, that counsel's deficiencies prejudiced petitioner's defense. *Strickland v. Washington,* 466 U.S. 668 (1984). The petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. As the *Strickland* Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689.

7

Here, Ms. Wilkins's petition advances no factual support whatsoever for a claim that her attorney was constitutionally ineffective with regard to the court's calculation and imposition of her sentence. Rather, it is apparent from the transcript of the sentencing hearing that Ms. Wilkins' conviction and sentence were the result of her own criminal conduct and well-documented incorrigibility. Her § 2255 petition fails on its face to allege a basis for relief, and the record amply supports the sentence she received, notwithstanding the diligence of her lawyer and concessions by the Government.

Ms. Wilkins' third ground for relief is that her lawyer was ineffective because "the Government did not inform me that they would request a departure under Rule 32. . . ." The record on its face discloses that notice was provided of the possibility of an upward departure by the Probation Officer's "FACTORS THAT MAY WARRANT DEPARTURE OR VARIANCE" section of the Presentence Report. Therein, Ms. Wilkins, her counsel, the Government and the court were alerted that a factual basis appeared to exist for upward departure in light of the likelihood there were additional victims whose losses had not been captured by the offense level, and the fact that ten prior criminal convictions for similar conduct were not counted in calculating Ms. Wilkins' advisory Guidelines range, resulting in a substantially under-representative criminal history score. *See* PSR at ¶¶ 69 & 70. This third claim, therefore, also is meritless on its face.

In conclusion, for the foregoing reasons, the court finds and concludes that it appears from the face of Ms. Wilkins' § 2255 motion and the record herein that she is not entitled to the relief she seeks. Accordingly, the instant motion [DE-85] is DISMISSED and the Clerk of Court is DIRECTED to so notify Ms. Wilkins. Rule 4, RULES GOVERNING § 2255 PROCEEDINGS.

# CERTIFICATE OF APPEALABILITY

I, James C. Fox, Senior United States District Judge for the Eastern District of North Carolina, having denied the application for relief pursuant to 28 U.S.C. § 2255 from which petitioner, Dawnice Wilkins, may seek an appeal, am of the opinion that she has failed to make a substantial showing of the denial of a constitutional right, and that no reasonable jurist would find this court's assessment of the petitioner's claims debatable.

Therefore, it is ORDERED that a Certificate of Appealability is DENIED.

SO ORDERED.

This, the 27th day of July, 2012.

*James C. Fox*
JAMES C. FOX
Senior U.S. District Judge